UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DOUGLAS OAKLEY, *et al.*,       )
   *Plaintiffs*,              )
                                )
*vs*.                           )    1:10-cv-00166-JMS-MJD
                                )
REMY INTERNATIONAL, INC.,       )
   *Defendant*.              )
                                )

# ORDER

Plaintiffs—a group of retirees, their union, and their spouses—claim that Defendant Remy International, Inc. ("Remy"), wrongfully terminated their health- and life-insurance benefits after their collective bargaining agreement ("CBA") expired. Presently before the Court is Remy's motion for summary judgment. [Dkt. 59.]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would—as a matter of law—conclude in the moving party's favor and is thus unnecessary. Fed. R. Civ. Pro. 56(a), (c)(2). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010) (quotation and alteration omitted). The key inquiry concerns the existence of evidence to support a plaintiff's claims, not the weight or credibility of that evidence—both of

which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### UNDISPUTED MATERIAL FACTS

**A. The CBA and Related Documents**

Remy sponsored health- and life-insurance plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* [Dkt. 60 at ¶1.][1] The Plaintiffs are a group of retirees, their spouses, and their union, the UAW. The employees retired from Remy's Anderson plant between 1998 and 2003.[2] [*Id.* ¶2.]

In 1997, Remy negotiated a three-year CBA with the UAW, a CBA that the parties later agreed would remain in effect at least until March 31, 2003. [*Id.* ¶9; dkt. 50-25 at 1.][3] In the resulting CBA, the parties agreed that "the understandings and agreements arrived at by the parties after the exercise of [their right to negotiate] are set forth in this Agreement." [Dkt. 61-1 at 13.] With respect to health- and life-insurance benefits, the CBA indicated that they would be governed by two attached supplemental agreements, respectively, the Health Care Supplemental Agreement and the Life & Disability Benefits Supplemental Agreement. [*Id.* at 14.]

The Life & Disability Supplemental Agreement included an attachment describing the benefits "program" that was going to be created. "In the event of any conflict between the provi-

---

[1] With two minor exceptions (that an asserted "fact" is a legal conclusion), "Plaintiffs agree with Defendant that the numbered facts in Defendant's brief in support of its motion for summary judgment are undisputed." [Dkt. 67 at 2.] Remy likewise doesn't dispute the additional facts that the Plaintiffs identified in their response brief. [*See* dkt. 68 at 1-2.] The parties' briefs focus on the legal effect of the facts.

[2] For simplicity, the Court will only refer to Remy, rather than trying to distinguish it from its predecessor-in-interest.

[3] Neither side discusses whether "vesting" benefits for workers who retired under new CBA differed from the practice under the old contract in place at the factory at issue.

sions of the Program and the provisions of this Agreement [the Life & Disability Supplemental Agreement], the provisions of this Agreement will supersede the provisions of the Program to the extent necessary to eliminate such conflict." [Dkt. 50-23 at 15.] As is relevant here, the program document provided that "[a]n insured employee who retires or is retired prior to age 60…and who was insured to the date such employee retires or was retired shall have only Basic Life and Extra Accident Insurance continued to age 65 without any premium contribution." [Dkt. 50-24 at 35.] When retirees reached 65, the life insurance benefit would be reduced under a formula. For those retirees with at least ten years of service, "in no event" would the insurance provided be "less than $5000…[and] will be continued…until the death of the employee, subject to the rights reserved to the Corporation to modify or discontinue this Plan." [Dkt. 50-23 at 38.] The Plaintiffs have asserted, [dkt. 67 at 34], and Remy hasn't disputed, that a clause in the main text of the Life & Disability Supplemental Agreement prevents Remy from modifying the plan "except by mutual agreement between the Corporation and the Union." [Dkt. 50-23 at 17.]

The Health Care Supplemental Agreement had a similar attachment describing the benefits program, one that likewise would give way in the face of any conflicting language in the Health Care Supplemental Agreement itself. [Dkt. 50-14 at 5.] Among other things, the program specified the following health coverages:

- For employees on layoff status, coverage "shall be continued during periods of layoff for up to 25 consecutive months." [Dkt. 50-16 at 2.]

- For employees who retire, their coverage "shall be continued" if they are eligible for a benefit under a specified pension plan. [*Id.* at 4.]

- For a spouse who survives an eligible retired employee, "[t]he Corporation shall make suitable arrangements for [the] surviving spouses…to participate in health care coverages; provided, however, that dental coverage shall be available to [the] surviving spouse age 65 or over only for months that such surviving spouse is enrolled for Medicare Part B coverage." [Dkt. 50-16 at 5.]

Both the Life & Disability Supplemental Agreement and the Health Care Supplemental Agreement, in their main texts, included the following language under sections entitled "Duration of Agreement":  "This Agreement and Program as modified and supplemented by this Agreement shall continue in effect until the termination of the Collective Bargaining Agreement of which it is a part."  [Dkt. 50-15 at 1; dkt. 50-23 at 26.]  The CBA expired as scheduled on March 31, 2003.  [Dkt. 60 ¶25.]

**B.  The 2003 Plant Closing**

In January 2003, Remy notified the UAW that it was closing the Anderson plant.  [*Id.* ¶23.]  Remy and the UAW then began negotiations over a potential shutdown agreement for the plant.  [*Id.*]  As part of those negotiations, Remy put forth its "last, best, and final" offer.  The portion of the written offer addressing retiree healthcare coverage read as follows:

| Issue | Company Final Offer in the Absence of an Agreement | Company Final Offer with a Ratified, Signed Shutdown Agreement | Comments |
|---|---|---|---|
| Retiree Medical | …The retiree medical portion of the Health Care Program shall continue in effect for eligible employees with vested retiree medical benefits through [Remy]….All existing qualification options…would continue to apply—intent is not to change any terms of the existing [health plan] document.  Any changes to benefits (none are currently contemplated) would be governed by the terms of the existing plan documents. | Same as Column 2 | This is not in dispute, except for the UAW's proposal to limit the extent to which plan benefits may be modified or eliminated in the future for retirees. |

[Dkt. 50-26 at 2-3.]  Although the offer didn't specifically mention life insurance, it did mention disability insurance under the Life & Disability Supplemental Agreement:

| Issue | Company Final Offer in the Absence of an Agreement | Company Final Offer with a Ratified, Signed Shutdown Agreement | Comments |
|---|---|---|---|
| STD | Employees on Short-Term Disability as of 3/31/03 will continue to remain on STD in accordance with the terms of the STD plan. If the employee is not medically cleared they can "grow into" LTD in accordance with the terms of the STD and LTD plans…. | Employees on Short-Term Disability as of 3/31/03 will continue to remain on STD in accordance with the terms of the STD plan. If the employee is not medically cleared they can "grow into" LTD in accordance with the terms of the STD and LTD plans…. | This is not in dispute, assuming an agreement could be reached. |
| LTD | Employees on Long-Term Disability as of 3/31/03 will continue to remain on LTD in accordance with the terms of the LTD plan, and that plan (or a substantially similar plan) shall remain in effect until the last of the LTD claimants' eligibility for benefits expires…. | Employees on Long-Term Disability as of 3/31/03 will continue to remain on LTD in accordance with the terms of the LTD plan, and that plan (or a substantially similar plan) shall remain in effect until the last of the LTD claimants' eligibility for benefits expires…. | This is not in dispute, assuming an agreement could be reached. |

[Dkt. 50-26 at 7.]

Because the UAW and Remy failed to reach a shutdown agreement, Remy wrote the UAW that Remy was proceeding with the first column of its last, best, and final offer. [Dkt. 50-27 at 1.] Accordingly:

> [A]ll prior agreements between the Company and the UAW are terminated following their expiration on March 31, 2003, with the sole exception of the Pension Plan, the Health Care Program (for COBRA continuation and retiree medical benefits only), the 401(k) Plan…, and the STD and LTD plans (only for employees receiving STD and LTD benefits as of 3/31/03), to the extent set forth in the Final Offer.

[*Id.*]

### C. Remy's Discontinuation of the Plaintiffs' Benefits

Remy continued providing health- and life-insurance benefits to Plaintiffs until it notified them in October 2009 that Remy would discontinue the benefits effective December 31, 2009. [Dkt. 67 at 10.]

### D. Remy's Bankruptcy

Remy filed for bankruptcy in 2007. *Remy International, Inc.*, Case No. 07-11497-KJC (D. Del. Bankr. filed Oct. 8, 2007). Neither party indicates whether the Plaintiffs filed a claim over those benefits there, nor whether Remy listed the future benefit payments as a liability. In any event, Remy doesn't contend that the reorganization plan relieved it of any contractual obligation that it may have had with respect to the Plaintiffs' benefits.

### III.
### DISCUSSION

Remy's motion for summary judgment presents a single issue: Did the Plaintiffs have a continued contractual right to health- and life-insurance benefits after the CBA that created those benefits expired? The parties agree that the answer to that question depends solely upon federal law. *E.g.*, *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 541 (7th Cir. 2000).

The Seventh Circuit has held that, unless the CBA provides otherwise, any right to employee benefits does not vest and instead terminates when the CBA expires. *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 784 (7th Cir. 2005) ("Upon vesting, benefits become forever unalterable, and because employers are not legally required to vest benefits, the intention to vest must be found in clear and express language in plan documents." (quotation omitted)); *Pabst Brewing Co. v. Corrao*, 161 F.3d 434, 439 (7th Cir. 1998) ("ERISA does not require the vesting of welfare benefits; if they vest at all, they do so under the terms of a particular contract."). When deciding whether the CBA provides otherwise, its "terms are given their ordinary and popular

meaning, the document is read as a whole with all its parts given effect, and related documents are read together." *Temme v. Bemis Co.*, 622 F.3d 730, 734 (7th Cir. 2010) (quotation and citation omitted). The Court may only resort to extrinsic evidence to resolve an ambiguity in the CBA. *Id.* (citation omitted).

Two types of ambiguities exist. "A patent ambiguity is an ambiguity that clearly appears on the face of a document, arising from the language itself." *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 482 (7th Cir. 2006). *See also Rossetto*, 217 F.3d at 543 ("[I]f…an ambiguity is apparent just from reading the contract without having to know anything about how it interacts with the world[,] then the contract has what is called a patent, or intrinsic, ambiguity, and evidence is admissible to cure it." (citations omitted)). In contrast, a latent ambiguity arises when facts outside the four corners of the contract make otherwise clear language unclear. *Id.* at 542 ("A latent ambiguity is an ambiguity…that is recognized as such only when a contract clear on its face— clear, that is, to the uninformed reader—is applied to a particular dispute." (citations omitted)). In other words, a latent ambiguity exists when facts outside the four corners of the contract are enough "to make you scratch your head." *Rossetto*, 217 F.3d at 544. The latent-ambiguity doctrine represents, therefore, an "exception" to "the general proposition that unambiguous contracts are to be interpreted as written, without recourse to extrinsic evidence that might contradict the literal meaning." *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1046 (7th Cir. 2007) (citations omitted).

The Seventh Circuit limits the type of evidence that a party can rely upon to establish a latent ambiguity. The evidence must be "objective," meaning evidence from "disinterested witnesses," or meaning evidence that is "uncontested," or both. *Rossetto*, 217 F.3d at 546. "Evi-

dence is not objective when it is the self-serving testimony of one party to the contract as to what the contract, clear on its face, 'really' means, contrary to what it seems to mean." *Id.* at 547.

Thus, in summary:

1. If a collective bargaining agreement is completely silent on the duration of health benefits, the entitlement to them expires with the agreement, as a matter of law (that is, without going beyond the pleadings), unless the plaintiff can show by objective evidence that the agreement is latently ambiguous, that is, that anyone knowledgeable about the real-world context of the agreement would realize that it might not mean what it says….

2. If the agreement makes clear that the entitlement expires with the agreement, as by including such a phrase as 'during the term of this agreement,' then, once again, the plaintiff loses as a matter of law unless he can show a latent ambiguity by means of objective evidence….

3. If there is language in the agreement to suggest a grant of lifetime benefits, and the suggestion is not negated by the agreement read as a whole, the plaintiff is entitled to a trial. Of course, if the agreement expressly grants such benefits, the plaintiff is entitled, not to a trial, but to a judgment in his favor.

*Id.*

The parties disagree as to which of the rules set forth above applies. After reviewing the CBA and its associated documents, the Court finds that Rule 2 controls. Summary judgment may not, however, issue because the Plaintiffs have identified objective evidence of a latent ambiguity.

**A. The Applicability of Rule 2**

Rule 2 applies by process of elimination.

Rule 1 is inapplicable because that rule only comes into play if there is no contractual language about the duration of benefits. *Id.* Such contractual language, however, exists here. Plaintiffs assert, and Remy concedes, that the health- and life-insurance "programs" contain provisions that contemplate lifetime benefits. [*See* dkt. 68 at 6 ("[C]ertain provisions of the Plans (contained in the "Programs") describe benefits for retirees or their surviving spouses as continu-

ing until, or being available before or after, certain ages (such as 65) or until death.") (citing Plaintiff's response brief [dkt. 67] at 4-7).]

Despite the language in the programs section that suggests lifetime benefits, Rule 3 doesn't apply either. Another contractual provision eliminates an expectation of those lifetime benefits: the "duration of agreement" clauses in the supplemental agreements. Those clauses state that the supplemental agreements, and the benefits programs that they created, "shall continue in effect until the termination of the Collective Bargaining Agreement of which [they are] a part." [Dkt. 50-15 at 1; dkt. 50-23 at 26.] That language is inconsistent with vested lifetime benefits. *See, e.g.*, *Cherry*, 441 F.3d at 483-84 (finding no vesting where CBA provided that "[t]he Company will maintain during the period of this Agreement…[various insurance and other benefits] as set forth in this agreement." (emphasis omitted; ellipses in original)). By express terms, language in the supplemental agreements controls "[i]n the event of any conflict between the provisions of the Program and the provisions of [the supplemental agreements]." [Dkt. 50-14 at 5; 50-23 at 15.] Even if no such express hierarchy of contractual language existed, the Court would still have to reach the same result. A contractual provision that limits benefits to the period of an agreement must be given effect, even if other contractual provisions suggest lifetime benefits. *Cherry*, 441 F.3d at 483-84 ("[W]here a reservation of rights clause coexists with a guarantee of lifetime benefits, we must resolve the tension between the lifetime benefits clause, and the plan termination and reservation of rights clauses, by giving meaning to all of them." (quotation omitted)).

While the Plaintiffs make several arguments against the relevance of the durational clauses to Remy's obligation to continue providing benefits, none of those arguments succeed.

First, the Plaintiffs ask the Court to ignore the durational clauses because "[v]irtually all collective bargaining agreements have durational clauses that include expiration dates," including the one at issue here. [Dkt. 67 at 13] In their view, the "duration clause limits the term of the agreement between the parties; the question for the Court is whether the benefits created by the agreement were intended to outlive its term." [*Id.*] But as Remy correctly notes, the durational clauses here are found within the supplemental agreements to the CBA. Those supplemental agreements, including the benefits programs that are attached to them, actually constitute the benefits plans to which the Plaintiffs claim entitle them to benefits. The durational clauses are, therefore, just as much a part of the plans as are the other provisions that the Plaintiffs cite.

Second, the Plaintiffs over-read Judge Hamilton's opinion in *UAW v. Delco Remy America, Inc.*, 1:03-cv-0543-DFH-WTL [dkt. 80] (S.D. Ind. Sep. 9, 2005). In that case, the UAW and laid-off workers from Remy's Anderson plant sued Remy for failing to provide them with 25 months of healthcare coverage after their layoffs in 2003 in connection with the expiration of the same CBA at issue here. Judge Hamilton held that the employees who were laid off before the CBA expired were entitled to their full 25 months of benefits, even though the payment of those benefits would extend beyond the term of the CBA. *Id.* at 11. That holding, the Plaintiffs say, incorrectly, means that the Court can disregard the duration clauses in the supplemental agreements and focus only on the language in the benefits programs. They ignore, however, that Judge Hamilton found it particularly relevant to his holding that the UAW sought "health coverage for only the specific and limited duration enumerated in the contract, a period not exceeding 25 months," rather than an open-ended lifetime entitlement to benefits—like what the Plaintiffs seek here. *Id.* at 8. Additionally, given the three-year duration of the CBA (before it was renewed), Judge Hamilton found it incredible that the parties would have negotiated "the 25-month

provision [that could be] fully effective for only the first eleven months of the contract term." *Id.* at 9. That concern is, of course, also not present here.[4]

Finally, the Plaintiffs unsuccessfully attempt to analogize the health- and life-insurance programs with retiree pension and long-term disability benefits. They say that, even after the CBA expired, no one believes that Remy can cancel pension payments or stop long-term disability payments to disabled workers—despite the similarly worded durational clauses that apply to the pension and disability plans. [*See* dkt. 67 at 13-14, 28-29.] Thus, in their view, the health and life-insurance benefits should receive the same treatment. But the analogy fails with respect to pension benefits, which vest by statute. *Barnett v. Ameren Corp.*, 436 F.3d 830, 832 (7th Cir. 2006) ("Unlike pension benefits, ERISA does not require the vesting of health-care benefits." (citation omitted)). At issue here is what the parties agreed to by contract. With respect to long-term disability benefits, the analogy fails because of the nature of the insured event. For employees receiving long-term disability, the disabling injury, and hence the right to payment, occurred while the CBA remained in effect. By contrast, the Plaintiffs seek to make Remy pay for their illnesses and (in the case of life insurance) their eventual deaths that post-date the CBA's expiration. Under the durational clauses, Remy's liability for future losses was capped at the moment the CBA expired. That's the most straightforward and natural understanding of what the parties meant when they agreed that the benefits programs would remain "in effect until the termination of the Collective Bargaining Agreement." [Dkt. 50-15 at 1; dkt. 50-23 at 26.]

---

[4] For what it's worth, the Court notes that Remy also over-reads Judge Hamilton's opinion. Remy suggests that Judge Hamilton opined that retirees would have no entitlement to lifetime benefits. In actuality, Judge Hamilton expressed no opinion about retirees. He merely noted that the case law that Remy cited was simply inapplicable because it dealt with lifetime benefits, rather than benefits for a fixed term, like the twenty-five month provision. *See id.* at 8.

Because neither Rule 1 nor Rule 3 applies, Rule 2 applies to this case: The four corners of the CBA provide that the benefits the Plaintiffs seek weren't vested lifetime benefits but instead expired with the CBA. Summary judgment must issue in Remy's favor unless the Plaintiffs can point to objective evidence of a latent ambiguity.

### B. Objective Evidence of a Latent Ambiguity

Although Rule 2 applies, the Plaintiffs are nonetheless entitled to a trial. They have—to quote the magistrate judge who correctly expressed the same opinion in an earlier scheduling order—"presented some objective evidence suggesting that the parties' language means something other than what it seems." [Dkt. 49 at 3.] Most importantly, Remy continued to provide the Plaintiffs benefits for six years after the CBA expired and the plant closed, including for almost two years after Remy filed for bankruptcy. It is true, as Remy argues, that gratuitously providing the Plaintiffs benefits doesn't create a contractual obligation to continue providing them. *Senn v. United Dominion Indus.*, 951 F.2d 806, 814 (7th Cir. 1992). It is equally true, however, that for-profit corporations like Remy aren't charities. Absent a business reason (for example, a desire to maintain corporate goodwill), Remy was unlikely to have continued providing benefits to retirees and their spouses if Remy didn't believe it was actually obligated to do so, especially as it sought to reorganize itself during insolvency. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("One who believes that another has behaved irrationally has to make a strong case." (citations omitted)). Yet here, Remy has offered absolutely no explanation for its course of conduct. That course of conduct is, of course, relevant for understanding the parties' agreement. *Cf. Rossetto*, 217 F.3d at 546 ("Another bit of evidence favoring the plaintiffs is that Schlitz Brewing Company, which had a collective bargaining agreement with the machinists' union that was identical to the agreement at issue in this case, continues to this day to provide

health insurance to the retired machinists of its Milwaukee facilities, which it closed in 1981…after the expiration of the agreement.").

Additionally relevant, yet not nearly so powerful objective evidence, is Remy's description of the retiree benefits as "vested" in its last, best, final offer in 2003. Vested benefits survive a CBA. *Temme*, 622 F.3d at 735 (citation omitted). The final offer indicates that Remy disagreed with "UAW's proposal to limit the extent to which plan benefits may be modified or eliminated in the future for retirees." [Dkt. 50-26 at 2.] Remy provides no explanation here, however, as to what benefits it thought, as evidenced in the offer, had already "vested" under the CBA. Given Remy's continuation of the Plaintiffs' benefits after the CBA expired despite an intervening bankruptcy petition, a trial is needed to decide whether Remy's use of "vested" was simply a mistake—as Remy now only implicitly suggests—or whether its use of "vested" reflected its pre-litigation understanding of its contractual obligations.

Although an uninformed reader of the CBA would think that Remy could terminate the retirees' health- and life-insurance as soon as the CBA expired, the objective evidence described above is enough "to make you scratch your head," *Rossetto*, 217 F.3d at 544, about what the parties actually meant when they agreed that Remy would only keep its benefits programs "in effect" until the CBA expired. A trial will be needed to make that determination.

## IV.
### CONCLUSION

Accordingly, the Court **DENIES** Remy's motion for summary judgment. [Dkt. 59.]

06/14/2011

*Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Christina L. Clark
BAKER & DANIELS - Indianapolis
christina.clark@bakerd.com

Philip John Gutwein II
BAKER & DANIELS - Indianapolis
philip.gutwein@bakerd.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Jeffrey A. Macey
MACEY SWANSON & ALLMAN
jmacey@maceylaw.com

Michael John Nader
BAKER & DANIELS
michael.nader@bakerd.com

Andrew A. Nickelhoff
SACHS WALDMAN P.C.
anickelhoff@sachswaldman.com

Marshall J. Widick
SACHS WALDMAN P.C.
mwidick@sachswaldman.com