UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DOUGLAS OAKLEY, *et al.*, )
    *Plaintiffs*, )
)
*vs*. ) 1:10-cv-00166-JMS-MJD
)
REMY INTERNATIONAL, INC., )
    *Defendant*. )

# ORDER

Presently before the Court is Remy International, Inc.'s ("Remy") Motion for Reconsideration. [Dkt. 76.] In it, Remy argues that the Court erred in holding that the Plaintiffs, who are a group of retirees and spouses and their union, had identified objective evidence of a latent ambiguity about the duration of health- and life-insurance benefits in their now-expired Collective Bargaining Agreement (CBA), such that a trial is needed to decide whether their benefits expired along with the CBA or whether their benefits continue. [*See* dkt. 75.][1]

## I.
## A REMINDER ABOUT CIVILITY

While a trial judge's understanding of controlling law may not always be the understanding that reviewing judges ultimately adopt, all a judge can do is her best to apply controlling precedent on each ruling that she makes. *See generally In re Bridgestone/Firestone, Inc.*, 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002) ("[F]or any difficult question of law, there are at least two supportable positions, one of which could be adopted by the district court and the other of which could be embraced by an appellate judge.").

---

[1] For the sake of brevity, the Court will presume familiarity with its previous order.

Such was the case in the order at issue, where the Court endeavored to apply the rules announced in relevant precedent to the unique facts of this case, to determine the intent of the parties with respect to the benefits provisions at issue. Review of the Defendant's Motion for Summary Judgment was conducted consistent with the oath of office for United States district judges, as part of the Court's faithful and impartial discharge of its duties. 28 U.S.C. § 453. Nonetheless, the Court does not claim perfection in its rulings, and would not hesitate to grant a well-taken motion to reconsider. And well-taken or not, the Court does not condemn counsel for filing such motions, which "serve a valuable function in situations, albeit rare, where the court has patently misunderstood a party or made an error of apprehension." *Cusumano v. NRB, Inc.*, 1998 U.S. Dist. LEXIS 15418, *9-10 (N.D. Ill. 1998) (citation omitted).

As far as motions to reconsider go, this motion was exceptionally aggressive. Given the effort that the Court devotes to pending cases—and this case has been no exception—Remy's only barely veiled accusations that the Court either recklessly ignored or willfully refused to apply Circuit precedent is, therefore, unfortunate and disappointing. [*See, e.g.*, dkt. 77 at 2 ("The district court may not ignore or refuse to follow Seventh Circuit precedent." (citation omitted)).]

Both bench and bar have reciprocal obligations to address each other with respect. *See* Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, Lawyers' Duties to the Court Standard 1 & Courts' Duties to Lawyers Standard 1.[2] Here, Remy's counsel fell short of that obligation. The Court trusts that counsel will, in the future, exercise the civility to the bench that counsel has received and will continue to receive from the bench. One can disagree without being disagreeable.

---

[2] The Standards can be found here: <http://www.ca7.uscourts.gov/rules/rules.htm#standards>.

# II.
## STANDARD OF REVIEW

A district court has the inherent power to reconsider interlocutory orders, as justice requires, before entry of final judgment. *Spencer County Redevelopment Comm'n v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 7985, *3 (S.D. Ind. 2011); *see* Fed. R. of Civ. Pro. 54(b) (providing that any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). A motion to reconsider is appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A party seeking reconsideration cannot introduce new evidence that could have been discovered before the original motion or rehash previously rejected arguments. *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

# III.
## DISCUSSION

The Court previously found that when the CBA at issue said that the "[benefits agreements] and Program[s]…shall continue in effect until the termination of the Collective Bargaining Agreement," [dkt. 75 at 4 (quotation omitted)], the language unambiguously gave Remy the right to terminate benefits after CBA expired, [*id.* at 12]. Accordingly the Court applied "Rule 2" from the case-law synthesis that the Seventh Circuit offered in *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 547 (7th Cir. 2000), a synthesis that the parties agreed remains an accurate assessment of Seventh Circuit precedent, [dkts. 67 at 13; 68 at 2]. Under Rule 2, "[i]f the agreement makes clear that the entitlement expires with the agreement, as by including such a phrase

3

as 'during the term of this agreement,' then…the plaintiff loses as a matter of law unless he can show a latent ambiguity by means of objective evidence." *Id.* The Court found that the Plaintiffs had submitted objective evidence of a latent ambiguity as to "what the parties actually meant when they agreed that Remy would only keep its benefits programs 'in effect' until the CBA expired." [Dkt. 75 at 13.] The Court, therefore, denied Remy's motion for summary judgment.

In its motion to reconsider, Remy first argues, incorrectly, that the Court ignored "six analogous Seventh Circuit cases that have already considered CBAs with materially indistinguishable terms and held all of them to be unambiguous as a matter of law…." [Dkt. 77 at 1.] In fact, the Court originally read, and cited most of, the cases that Remy argues that the Court ignored. [*Compare* dkt. 77 at Table 1, *with* dkt. 75 at 6, 7, 11, 12.] Furthermore, the Court ultimately agreed that under Seventh Circuit authority, the plain text of the CBA is unambiguous as a matter of law that the "benefits the Plaintiffs seek…expired with the CBA." [Dkt. 75 at 12.] Given that Remy already "won" in invoking Rule 2, its stridency on that point in the motion to reconsider is surprising.

Of course, the fact that Remy successfully argued that Rule 2 applies did not—and still does not—automatically entitle Remy to summary judgment; nothing in any of the cases that Remy has cited suggests otherwise.[3] "[A] contract that is clear on its face can be shown by objective evidence to be ambiguous (to contain, in the language of contract law, a 'latent' as distinct from a 'patent' ambiguity)." *UMW v. Brushy Creek Coal Co.*, 505 F.3d 764, 768 (7th Cir.

---

[3] Perhaps, if Remy is unsuccessful at trial, Remy can convince the Seventh Circuit on appeal to foreclose relief to plaintiffs whenever Rule 2 applies, as it essentially argues should have occurred here. Until that occurs, however, the Court will fulfill its responsibility to consider objective evidence of latent ambiguity that can necessitate a trial.

2007) (collecting citations). *Accord Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 484 (7th Cir. 2006) (quoting *Rosetto* Rule 2); *Rossetto*, 217 F.3d at 547. That no reported Seventh Circuit case has yet found a case both to be governed by Rule 2 and to possess a sufficient latent ambiguity to merit a trial does not imply that all Rule 2 cases must result in summary judgment for the employer. *Cf. McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992) ("In sum, that no precisely analogous case exists does not defeat McDonald's claim…. The easiest cases don't even arise." (quotation omitted)). Under existing Seventh Circuit precedent, trials remain possible even under Rule 2. The Court is bound to consider, as it has, argument that the requisite objective evidence exists to merit a trial. To whatever extent Remy claims otherwise, established law requires the Court to reject that claim.

Next, while Remy correctly notes that (absent exceptions not relevant here) "there must be…contractual language on which to hang the label of ambiguous" before a contract can be deemed latently ambiguous, *Bidlack*, 993 F.2d at 608, it incorrectly argues that the Court has failed to identify the latently ambiguous language. As the Court held originally, the ambiguity occurs with what the parties actually meant when they said that the benefits agreements and programs would "continue in effect until the termination of the Collective Bargaining Agreement of which [they are each] a part." [*See* dkt. 75 at 12.] Although "the most straightforward and natural understanding of" that durational clause is that health- and life-insurance benefits stopped at the CBA's expiration, the Court found that Plaintiffs' objective evidence (when viewed with the inferences required on a motion for summary judgment) indicated that the parties may have meant something else, thereby creating a latent ambiguity, *Bidlack*, 993 F.2d at 608 (explaining that a latent ambiguity may arise when parties "us[e] words in a special sense" apart from their ordinary meaning); *Rossetto*, 217 F.3d 539 at 542 (explaining a latent ambiguity as arising if

someone reading contractual "provisions without knowing anything about their background or real-world context would say, 'Yes, it sure looks as if the provisions are in effect only for the term of the agreement in which they appear'"). For example, the parties may have intended the "shall continue in effect" language to have the same meaning that it has in connection with the pension agreement benefits, [dkt. 67-1 at 12]—benefits that Remy does not dispute that it remains contractually obligated to provide notwithstanding the expiration of the CBA. [*See* dkt. 75 at 11.]

Remy then takes issue with the probative value of the three pieces of objective evidence that the Court identified as creating a genuine issue of material fact on the issue of latent ambiguity: (1) that Remy had continued to pay benefits for six years after the CBA expired and the plant closed; (2) that almost two of those years of continued payments followed a bankruptcy petition; and (3) that Remy used the word "vested" when describing retiree benefits during contract renewal negotiations in 2003. [*See id.* at 12-13.]

With respect to items 1 and 2, Remy argues that they are irrelevant because they postdate the expiration of the CBA. But post-contract conduct is relevant where, as here, the issue is what the parties mutually intended their words to mean with respect to their post-CBA duties. *Cf. Rosetto*, 217 F.3d at 546 (finding relevant the conduct of a third-party employee after its identically worded collective bargaining agreement expired).[4] Here, despite seemingly unambiguous language in the durational clause permitting Remy to terminate the retiree benefits once the CBA expired, Remy continued to provide retiree benefits for years—even during bankruptcy, when expenses are scrutinized for necessity, *see Vargas v. Educ. Credit Mgmt. Corp.*, 2010 U.S.

---

[4] Indeed, it is difficult to imagine a circumstance when a latent ambiguity would arise about post-CBA obligations before the CBA has actually expired.

Dist. LEXIS 136260, *6-7 (C.D. Ill. 2010).  The reasons for the continued payments are entirely absent from the evidentiary record.  These circumstances are, in this Court's view, materially distinguishable from "simply" continuing to pay benefits after the expiration of a CBA silent about the obligation to do so, *Barnett v. Ameren Corp.*, 436 F.3d 830, 835 (7th Cir. 2006) (citation omitted); or offering some payments "as an acknowledgment of legal jeopardy," *Brushy Creek*, 505 F.3d at 768, situations which the Seventh Circuit has held do not create an entitlement to continued payments.

As for item 3, which the Court indicated was "not nearly so powerful objective evidence," [dkt. 75 at 13], Remy claims that it falls under case law that generally finds disputes about contractual language insufficient to establish ambiguity.  *See, e.g.*, *Barnett*, 436 F.3 at 834.  But even if Remy were correct about the characterization of the language—which is inconsistent with the reasonable inferences mandated in favor of the nonmoving party on summary judgment—it still would not change the fact that the Court must look at the combined effect of all the objective evidence.  No case that Remy has identified mandates summary judgment where an employer continued to pay "vested" benefits for six years, including two following a bankruptcy petition.

Finally, while Remy correctly invokes the legal rule that extrinsic evidence may be used to explain, but not contradict contractual language, *see Bidlack*, 993 F.2d at 607, it incorrectly accuses the Court of breaching that rule.  If the parties meant the durational clause to have its plain and ordinary meaning, then Remy will prevail at trial.  A trial is, however, required because the Plaintiffs have adduced objective evidence that "create[s] a sufficient doubt about what the contract means…notwithstanding the apparent clarity of the written word." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 614-615 (7th Cir. 1998).  *See also AM Int'l v. Graphic Man-*

*agement Assocs.*, 44 F.3d 572, 575-76 (7th Cir. 1995) ("There are exceptions to the rule that only objective evidence can be used to alter the meaning of a clear contract, but they are consistent with the underlying principle. If the parties agree to an idiosyncratic meaning, the court will honor their agreement." (citation omitted)). While Remy comes quite close to openly deriding the Court for quantifying the amount of objective evidence required as enough "to make you scratch your head," [*see* dkt. 77 at 15], that is the standard that the Seventh Circuit has articulated, *Rossetto*, 217 F.3d at 544. The Court has applied and will apply that standard unless and until the Seventh Circuit changes it.

### IV.
#### CONCLUSION

After studying all the cases that Remy has cited, the Court finds that none of them entitle Remy to summary judgment. Accordingly, Remy's motion for reconsideration, [dkt. 76], is **DENIED**.

10/26/2011

                                              */s/ Jane Magnus-Stinson*
                                              Hon. Jane Magnus-Stinson, Judge
                                              United States District Court
                                              Southern District of Indiana

**Distribution via CM/ECF:**

Christina L. Clark
BAKER & DANIELS - Indianapolis
christina.clark@bakerd.com

Philip John Gutwein II
BAKER & DANIELS - Indianapolis
philip.gutwein@bakerd.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Jeffrey A. Macey
MACEY SWANSON & ALLMAN
jmacey@maceylaw.com

Robert D. Moreland
BAKER & DANIELS
rdmorela@bakerd.com

Michael John Nader
BAKER & DANIELS
michael.nader@bakerd.com

Andrew A. Nickelhoff
SACHS WALDMAN P.C.
anickelhoff@sachswaldman.com

Marshall J. Widick
SACHS WALDMAN P.C.
mwidick@sachswaldman.com